# United States Tax Court

T.C. Memo. 2023-106

DANIEL E. LARKIN AND CHRISTINE L. LARKIN,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

DANIEL E. LARKIN AND CHRISTINE LARKIN,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent[1]

————

Docket Nos. 14886-08, 19940-09.                    Filed August 16, 2023.

————

Daniel E. Larkin and Christine L. Larkin, pro sese.

*Briseyda Villalpando*, *Sarah E. Sexton Martinez*, *Anthony T. Sheehan*, and *Mayah Solh-Cade*, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

GALE, *Judge*: These consolidated cases, concerning deficiencies in petitioners' federal income tax for the taxable years 2003, 2004, 2005, and 2006, are before us for disposition pursuant to the mandate of the U.S. Court of Appeals for the District of Columbia Circuit. The court of

[1] This Opinion supplements our previously filed opinion *Larkin v. Commissioner* (*Larkin I*), T.C. Memo. 2017-54, *aff'd in part, vacated in part, and remanded*, *Larkin v. Commissioner* (*Larkin II*), No. 17-1252, 2020 WL 2301462 (D.C. Cir. Apr. 21, 2020), *cert. denied*, 141 S. Ct. 1072 (2021).

**[\*2]** appeals affirmed the decisions we previously entered under Rule 155[2] in these cases "except as to four discrete errors acknowledged by the Commissioner" affecting the correct amounts of the deficiencies, additions to tax, and penalties due from petitioners for the years at issue. *See Larkin II*, 2020 WL 2301462, at \*1, \*3. The court of appeals accordingly vacated our decisions in part and remanded the cases for entry of corrected decisions. *See id.* at \*3. Notwithstanding petitioners' objections, we will enter revised decisions based on respondent's now twice-revised Rule 155 computations.

## *Background*

In our previous opinion in these cases, we stated that decisions would be entered under Rule 155. *Larkin I*, T.C. Memo. 2017-54, at \*83. The parties disagreed as to the correct computation of the amounts due from petitioners for the years at issue. Pursuant to Rule 155(b), we adopted respondent's Computation for Entry of Decision, as supplemented, in the case at Docket No. 14886-08, and his Computation for Entry of Decision, as supplemented, in the case at Docket No. 19940-09. *See* Order and Decision, T.C. Dkt. No. 14886-08 (Sept. 14, 2017); Order and Decision, T.C. Dkt. No. 19940-09 (Sept. 14, 2017).

The Order and Decision we entered in the case at Docket No. 14886-08 determined deficiencies, a section 6651(a)(1) addition to tax, and section 6662(a) accuracy-related penalties as follows:

| Year | Deficiency | Additions to Tax/Penalties | |
| | | § 6651(a)(1) | § 6662(a) |
| --- | --- | --- | --- |
| 2003 | $81,698 | $20,424.50 | $16,339.60 |
| 2004 | 63,619 | — | 23,515.80 |

The Order and Decision we entered in the case at Docket No. 19940-09 determined deficiencies, a section 6651(a)(1) addition to tax, and section 6662(a) accuracy-related penalties as follows:

| Year | Deficiency | Additions to Tax/Penalties | |
| | | § 6651(a)(1) | § 6662(a) |
| --- | --- | --- | --- |
| 2005 | $114,870 | $11,487 | $22,974.00 |
| 2006 | 118,259 | — | 23,651.80 |

---

[2] Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times.

**[\*3]**   Petitioners appealed. *See Larkin II*, 2020 WL 2301462, at \*1. On appeal, respondent acknowledged four errors affecting the amounts of the deficiencies, additions to tax, and penalties we had determined: (1) the inclusion of self-employment tax in the computation of petitioners' tax liabilities for each year; (2) the inclusion, due to a computational error, of a $27 increase to petitioners' income for 2003; (3) the inclusion, due to a computational error, of an excess $10,792 in the section 6662(a) penalty for 2004; and (4) the inclusion, due to a computational error, of a $1,948 increase to petitioners' income for 2006. *See id.* at \*3.  The court of appeals granted respondent's request for "a limited remand to correct those errors and recalculate the Larkins' assessments and penalties," but otherwise affirmed our decisions. *Id.*

To recalculate the amounts due from petitioners as the court of appeals instructed, we directed the parties to file revised Rule 155 computations.  After obtaining an extension of time to do so, respondent timely filed revised computations proposing corrected deficiencies, additions to tax, and penalties for all of the years at issue.  Petitioners did not timely file computations of their own, nor did they file any objection to respondent's revised computations when we directed them to do so.  Counsel thereafter entered an appearance for petitioners and moved the Court for an extension of time to respond to respondent's revised computations.

Upon reviewing the revised computations, we were unable to reconcile the adjustments underlying the revised deficiency and section 6662(a) penalty that respondent proposed for 2004 with the amounts we had previously determined for that year.  We therefore directed respondent to supplement or further revise his computations to address the discrepancies we had identified.  In addition, solely because of the possibility of error in respondent's revised computations, we granted an extension of time for petitioners to file objections to respondent's revised computations, as thereafter supplemented.

As directed, respondent filed a First Supplement to his Computation for Entry of Decision in the case at Docket No. 14886-08 (Supplement), which explained his computation for 2004 and included, among other documents, Forms 3623, Statement of Account, for both 2003 and 2004.

With respect to 2003, the Form 3623 attached to respondent's Supplement indicated that, while petitioners' appeal was pending, respondent assessed a deficiency, addition to tax, and penalty in

4

[*4] accordance with the amounts determined in our prior Order and Decision. *See* § 7485(a) (providing that a deficiency determined by the Tax Court may be assessed during the pendency of an appeal unless the taxpayer posts a bond). The Form 3623 further indicated that those assessments reflected petitioners' total assessed tax liability for that year. After accounting for adjustments to correct the errors he acknowledged on appeal with respect to 2003, respondent proposed that we enter a decision reflecting a revised deficiency of $65,390, along with a corresponding section 6651(a)(1) addition to tax of $16,347.50 and a section 6662(a) penalty of $13,078. Respondent's Form 3623 showed that these amounts would represent petitioners' total revised liability for 2003.

For 2004, respondent took the position in his Supplement, in short, that we should enter a revised decision finding petitioners liable for a deficiency equal to their total tax due for that year, which he calculated as $99,399, along with a corresponding section 6662(a) penalty equal to 20% of the tax due, or $19,879.60.[3] Respondent explained that, in his view, the total amount of the deficiency should include $53,961 of tax assessed on June 18, 2007,[4] pursuant to a "defaulted AUR notice,"[5] plus the $63,619 deficiency we previously determined[6] (which was assessed while petitioners' appeal was

---

[3] Twenty percent of the $99,399 tax liability is actually $19,879.80. Respondent's Form 3623 for 2004 reveals that the 20-cent discrepancy between the correct figure and the one respondent proposed resulted from respondent's assessment of a rounded-down penalty of $10,792 on June 18, 2007. The exact amount of that penalty (20% of the $53,961 of tax assessed on the same date, *see infra* note 4) would have been $10,792.20.

[4] During the trial of these cases we received into evidence Exhibit 21–R, which included a copy of a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for petitioners' 2004 taxable year. Absent a showing of irregularity, a Form 4340 provides presumptive proof of its contents. *See, e.g.*, *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam); *Davis v. Commissioner*, 115 T.C. 35, 40–41 (2000). The Form 4340 indicated that respondent assessed $1,464.92 of tax reported as due on petitioners' federal income tax return for 2004, which was filed in 2005. It further indicated that respondent later abated that assessment in favor of new assessments made on June 18, 2007, which included $53,961 of tax and a corresponding section 6662(a) penalty of $10,792.

[5] Respondent provided no other information in his Supplement about this notice.

[6] Respondent's prior computation of the deficiency for 2004, which we incorporated in our prior Order and Decision in the case at Docket No. 14886-08, indicated that the $53,961 assessment had been made on June 18, 2007, and excluded

[*5] pending), minus $18,181 to correct the error respondent acknowledged on appeal relating to self-employment tax. In addition, respondent represented that he would abate any previously assessed tax and penalty for 2004 in excess of $99,399 and $19,879.60,[7] respectively.

For 2005 and 2006, respondent did not file any supplement to the revised computation he had already filed in the case at Docket No. 19940-09 (Revised Computation). The Revised Computation included Forms 3623 indicating that, while petitioners' appeal was pending, respondent assessed deficiencies, an addition to tax, and penalties for 2005 and 2006 in accordance with the amounts determined in our prior Order and Decision, representing petitioners' total assessed tax liabilities for those years. After accounting for adjustments to correct the errors he acknowledged on appeal with respect to 2005 and 2006, respondent proposed that we enter a revised decision reflecting deficiencies, a section 6651(a)(1) addition to tax, and section 6662(a) penalties as follows:

| Year | Deficiency | Additions to Tax/Penalties | |
| | | § 6651(a)(1) | § 6662(a) |
| --- | --- | --- | --- |
| 2005 | $95,995 | $9,599.50 | $19,199.00 |
| 2006 | 99,534 | — | 19,906.80 |

The Forms 3623 showed that these amounts would represent petitioners' total revised liabilities for 2005 and 2006.

Petitioners, through counsel, timely filed a Response to respondent's Supplement and Revised Computation. Therein, petitioners argued that we could not properly find deficiencies equal to their total liabilities for the years at issue, as respondent proposed, if respondent had made assessments for those years that had not been abated. In support of their position, petitioners cited section 6211(a),

it from the amount of the deficiency. The prior computation also noted that $10,792 had previously been assessed as a section 6662(a) penalty (although instead of giving the date of the penalty assessment, it indicated that the penalty had been shown on petitioners' return).

[7] Respondent indicated in his Supplement that the amount of the previously assessed penalty for 2004, which totaled $34,307.80, should be reduced by $14,428.20. Most of this adjustment represents a correction of the $10,792 error in the amount of the penalty that respondent acknowledged on appeal and which he concedes he failed to correct in his revised computation as originally filed. The remaining $3,636.20 of the adjustment represents a reversal of the 20% section 6662(a) penalty that would have been due on the $18,181 that was, as respondent conceded on appeal, erroneously included in the computation of petitioners' tax liability.

**[\*6]** which defines a deficiency in income tax as the amount by which the tax imposed exceeds the excess of the sum of the tax shown on the taxpayer's return plus "the amounts previously assessed (or collected without assessment) as a deficiency" over any rebates. Petitioners interpreted that definition to preclude us, at this stage in the proceedings, from finding a deficiency unless and until respondent abated any amount he "previously assessed . . . as a deficiency."[8] Petitioners therefore requested that, before entering revised decisions, we direct respondent to prove that there are no existing assessments for any of the years at issue.

To aid us in resolving the conflict between the parties' positions, we directed them to submit memoranda addressing several issues. First, we asked the parties to explain the nature of the "defaulted AUR notice" that resulted in the assessments for the 2004 taxable year that respondent made in 2007. We also requested that they explain whether the tax assessed in 2007 should be excluded from the calculation of the revised deficiency for 2004 in accordance with *Heasley v. Commissioner*, 45 T.C. 448, 457–58 (1966), where we held that for purposes of computing a taxpayer's deficiency under Rule 50 (the predecessor to Rule 155), section 6211(a) required the exclusion of a prior, unabated, and presumptively lawful deficiency assessment from the amount of the deficiency to be determined for the year at issue. In addition, we requested that the parties analyze how these cases are affected by section 7486, which provides for the abatement of amounts assessed pursuant to section 7485(a) but later disallowed on appeal, and *Estate of Smith v. Commissioner*, 115 T.C. 342, 345–47 (2000), where we explained that section 7486 generally does not require the Commissioner to abate an assessment made under section 7485(a) until the Tax Court, on remand, enters a final order revising the amount of the deficiency. Finally, we directed respondent to further supplement or revise his Rule 155 computations in the event that his analysis of the foregoing issues indicated that such supplementation or revision was appropriate.

After obtaining an extension of time to do so, respondent filed a Response to Order, together with further revised Rule 155 computations, as directed. In his Response to Order, respondent represents that although the administrative file for petitioners' 2004 taxable year has been destroyed, transcripts for their account indicate

---

[8] With certain exceptions, additions to tax and penalties are assessed in the same manner as taxes and thus are subject to deficiency procedures. *See* § 6665.

[*7] that petitioners' 2004 return was selected for review through respondent's automated underreporter, or AUR, program, which identifies returns for review by comparing them with information reported by third parties. According to respondent, the transaction codes listed in the transcripts indicate that he selected petitioners' return for review and thereafter issued them a Notice CP 2000 proposing adjustments to certain items they had reported on the return. Respondent further represents that the transcripts indicate that he subsequently revised the proposed adjustments on the basis of information that petitioners provided in response to the Notice CP 2000, and later issued them a notice of deficiency in which he determined that they were liable for a deficiency of $53,961. Respondent states that the transcripts further reflect that the deficiency was assessed on June 18, 2007, after petitioners failed to timely file a petition for redetermination with the Tax Court.

With respect to the amounts of the deficiencies, additions to tax, and penalties to be included in our revised decisions, respondent contends that all assessments and abatements are accurately reflected in the Forms 3623 included in his Supplement and in his Revised Computation.[9] But in a reversal of his prior position, respondent now contends that in view of section 6211(a) and our holding in *Heasley*, our revised decisions in these cases must determine deficiencies, additions

---

[9] For clarity, our discussion of the specific amounts to be included in our revised decisions will refer to respondent's Supplement and Revised Computation. The figures reflected therein are substantially identical to those set forth in respondent's most recently revised Forms 3623, which were included with the further revised computations that he subsequently submitted to the Court.

The sole exception is an obvious clerical or mathematical error. Respondent's most recently revised Form 3623 for 2004 indicates that the total assessed section 6662(a) penalty for that year is $10,792 and that he will need to assess an additional $9,087.60 to reflect petitioners' total correct penalty liability of $19,879.60. But it includes other entries, along with a detailed explanation in a footnote, indicating that respondent has actually already assessed $34,307.80 of section 6662(a) penalties against petitioners for 2004, consisting of $10,792 assessed in 2007 in connection with the deficiency determined through the AUR program, and $23,515.80 assessed in 2017 following the entry of our prior Order and Decision. The footnote makes clear that the amount assessed in 2017 included an inadvertent second assessment of the $10,792 that had already been assessed, plus a $12,723.80 penalty corresponding to the deficiency we determined in our prior Order and Decision. Moreover, the assessments described in the footnote are consistent with those shown in an accompanying summary of the computation, as well as with those shown in the Supplement that respondent previously submitted to the Court. We will therefore disregard the inconsistent entries reflected in the most recent Form 3623.

**[\*8]** to tax, and penalties of zero for each year at issue. Respondent represents that after the Court enters revised decisions, he will make the necessary abatements to adjust the existing assessments in accordance with section 7486.

Petitioners, now proceeding pro sese, also filed a Response to Order in which they contend that (1) they never received the "defaulted AUR notice" described in respondent's submissions, or any other document relating to the assessments made in 2007; (2) the assessments made pursuant to that notice should be excluded from the Rule 155 computation for 2004 because "they were never before the Court in this proceeding"; (3) in May 2017 respondent fully abated petitioners' liabilities for 2005 and 2006; and (4) section 7486 and *Estate of Smith* permit respondent to apply foreign tax credit (FTC) carryovers from other taxable years to offset the deficiencies for the years at issue and to adjust assessments "based on new documents and facts obtained prior to final adjudication."

Additionally, in view of respondent's filing of further revised computations, we afforded petitioners an opportunity to file written objections thereto. *See* Rule 155(b). In further Responses to Order setting forth their objections, petitioners largely restate the arguments we have just outlined. In so doing, petitioners make clear that their claim that respondent abated their liabilities for 2005 and 2006 is based on Notices CP21C that respondent issued to them in May 2017. Petitioners additionally contend that the penalties and additions to tax for the years at issue should not be sustained, either because they had sufficient FTCs to satisfy any amount due that otherwise might constitute an underpayment or late payment upon which any penalty or addition to tax could be imposed, or because respondent has failed to satisfy his burden to produce evidence of timely supervisory approval of the penalties in accordance with sections 6751(b) and 7491(c).

Petitioners also provide the following figures that they describe as the "appropriate base liability" for each year at issue, after accounting for adjustments that they variously attribute to "Sch[edule] A Deductions," "Sch[edule] C Deductions," "Other Income," and "Other":

[*9]

| Year | Amount |
|------|--------|
| 2003 | $48,254 |
| 2004 | 50,036 |
| 2005 | 59,302 |
| 2006 | 103,823 |

These figures presumably represent petitioners' proposed deficiencies for each of the years at issue.

## Discussion

We do not agree with either party's most recent position. We conclude, however, that respondent has submitted sufficient information, in conjunction with his representations that he will abate any overassessments, to allow us to enter decisions correcting the "discrete errors" that we must correct in order to comply with the mandate issued by the court of appeals.

### I. *Scope of Proceedings on Remand*

The task presently before us is a narrow one, constrained by the mandate issued by the court of appeals and by the provisions of Rule 155.

The opinion of the court of appeals "is binding in this remand proceeding under the 'mandate rule', which is an aspect of the law-of-case doctrine." *Romano-Murphy v. Commissioner*, 152 T.C. 278, 301 (2019) (quoting *Pelletier v. Zweifel*, 987 F.2d 716, 718 (11th Cir. 1993)), *supplementing* T.C. Memo. 2012-330; *see also Cavallaro v. Commissioner*, T.C. Memo. 2019-144, at *13–14, *supplementing* T.C. Memo. 2014-189. "The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). The underlying premise of the doctrine is that "the same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (emphasis omitted). "Accordingly, a 'legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'" *Kimberlin v. Quinlan*, 199 F.3d

[*10] 496, 500 (D.C. Cir. 1999) (quoting *Williamsburg Wax Museum, Inc. v. Hist. Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)).

A trial court therefore is not "permitted to reconsider its own rulings made before appeal and not raised on appeal." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478.3 (3d ed. 2019 & Supp. 2022); *see also United States v. Bazemore*, 839 F.3d 379, 385 (5th Cir. 2016) ("Moreover, the [mandate] rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." (alteration in original) (quoting *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004))); *United States v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008) ("And where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues unless the mandate can reasonably be understood as permitting it to do so." (quoting *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002))); *Schering Corp. v. Ill. Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996) ("Under the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case."); *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1089 (D.C. Cir. 1984) ("Adherence to the rule that a party waives a 'contention that could have been but was not raised on [a] prior appeal,' is, of course, necessary to the orderly conduct of litigation." (alteration in original) (citation omitted) (quoting *Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982))).

The scope of this proceeding is further limited by Rule 155, which establishes a procedural mechanism under which the Court may withhold entry of a decision for the sole purpose of permitting the parties to submit computations of the correct deficiencies, liabilities, or overpayments resulting from the Court's opinion resolving the issues in a case. *See* Rule 155(a); *Vento v. Commissioner*, 152 T.C. 1, 7 (2019), *supplementing* 147 T.C. 198 (2016), *aff'd*, 836 F. App'x 607 (9th Cir. 2021).

In the Rule 155 context, "[t]he starting point for the computation is the statutory notice of deficiency from which the parties compute the redetermined deficiency based upon matters agreed by the parties or ruled upon by the Court." *Home Grp., Inc. v. Commissioner*, 91 T.C. 265, 269 (1988), *supplementing City Investing Co. v. Commissioner*, T.C.

**[\*11]** Memo. 1987-36, *aff'd*, 875 F.2d 377 (2d Cir. 1989).  Rule 155 "is not to be regarded as affording an opportunity for retrial or reconsideration," Rule 155(c), and "[i]t goes without saying that issues which have been litigated at the trial of a case may not be relitigated in connection with the entry of decision under Rule 155," *Cloes v. Commissioner*, 79 T.C. 933, 935 (1982), *supplementing* T.C. Memo. 1981-726.  Nor is Rule 155 to be regarded as affording an opportunity to raise new issues that the Court has not previously addressed.  *Id.*; *see also Vento*, 152 T.C. at 8–9.  Thus, "[i]f a matter 'was neither placed in issue by the pleadings, addressed as an issue at trial, nor discussed by this Court in its prior opinion,' or if it 'would necessitate retrial or reconsideration,' that matter may not be raised in the context of a Rule 155 computation."  *Vento*, 152 T.C. at 8 (quoting *Molasky v. Commissioner*, 91 T.C. 683, 686 (1988), *aff'd on this issue*, 897 F.2d 334 (8th Cir. 1990)).  We may treat a matter as a new issue for purposes of Rule 155 "even if it has computational aspects."  *Id.* at 9 & n.6 (citing cases treating claims for net operating loss carrybacks as new issues).

In accordance with the foregoing constraints and as further discussed below, we decline to consider most of the issues that petitioners have raised.

II.  *Assessments for the 2004 Taxable Year Made in 2007*

We begin our analysis of the parties' positions with the oldest disputed assessments involved in these cases, consisting of the $53,961 deficiency and the $10,792 section 6662(a) penalty for the 2004 taxable year that were assessed in 2007.

We decline to consider petitioners' untimely claim that they did not receive a notice of deficiency in connection with those assessments.  Except to the extent that respondent conceded on appeal that he erroneously double-counted the $10,792 penalty in the computation of petitioners' 2004 liability, the court of appeals did not direct us to reconsider any issues relating to the assessments made in 2007.  Moreover, petitioners' assertion that the assessments made in 2007 "were never before the Court in this proceeding" amounts to a concession that any issues relating to those assessments are new issues that they did not raise in *Larkin I*.  Any such issues were accordingly conceded in the earlier proceedings before us.  *See, e.g.*, Rule 34(b)(1)(G)[10] (providing

---

[10] The version of this Rule in effect at the time the Petitions were filed was designated Rule 34(b)(4).

**[\*12]** that any issue not raised in the assignments of error in a petition is deemed conceded); *Bradley v. Commissioner*, 100 T.C. 367, 370–71 (1993) (treating issues not raised on brief as abandoned). Therefore, any such issues—other than the double-counting of the $10,792 penalty—are outside the scope of the mandate and are new issues that petitioners may not now raise under Rule 155.[11]

Consequently, as we did in *Heasley*, 45 T.C. at 457–58, we will treat the unabated tax assessment made in 2007 as a lawfully assessed deficiency. It thus constitutes an amount "previously assessed . . . as a deficiency" that formed no part of the deficiency we previously determined for 2004, and it forms no part of the deficiency that we must now determine for purposes of entering our revised decision as to 2004. *See* § 6211(a); *Heasley*, 45 T.C. at 457–58.

III. *Abatement of Remaining Assessments*

As for the other assessments reflected in respondent's revised computations, which were all made during the pendency of petitioners' appeal as authorized by section 7485(a), we reject any suggestion that those assessments must be abated before we may enter revised decisions.

---

[11] In this regard, we emphasize that petitioner Daniel E. Larkin is an experienced attorney who should have been well aware of petitioners' obligation to plead and argue any issues that they wished the Court to consider with respect to the deficiencies at issue in these cases. *See Larkin I*, T.C. Memo. 2017-54, at \*83; *see also Larkin II*, 2020 WL 2301462, at \*2; *Larkin v. Commissioner* (*Larkin III*), T.C. Memo. 2020-70, at \*4, *aff'd per curiam*, 129 A.F.T.R.2d (RIA) 2022-1360 (D.C. Cir. 2022).

If petitioners intend to suggest that they previously could not have challenged the assessments made in 2007 because they lacked notice of the existence of those assessments, we disagree. The Petition in the case at Docket No. 14886-08, which petitioners filed pro sese, included a copy of the notice of deficiency for 2003 and 2004, dated April 24, 2008, on which the Petition was based. The notice of deficiency indicated that respondent had determined a deficiency that was less than petitioners' total tax liability for 2004, because $53,961 of the total tax liability represented the "Total Tax Shown on Return or as Previously Adjusted." The notice of deficiency itself thus indicated the existence of a previous adjustment. In addition, as we observed *supra* note 4, the assessments made in 2007 were listed in Exhibit 21–R, which we received into evidence at trial. And as we observed *supra* note 6, respondent's prior Rule 155 computation for 2004, which was incorporated in the Order and Decision from which petitioners appealed, also listed those assessments. Petitioners thus had ample notice that the assessments existed, and they could have raised any challenge to those assessments at multiple stages of the earlier proceedings in this case.

**[\*13]** The abatement of such assessments is governed by section 7486, which provides as follows:

> In cases where assessment or collection has not been stayed by the filing of a bond, then if the amount of the deficiency determined by the Tax Court is disallowed in whole or in part by the court of review, the amount so disallowed shall be credited or refunded to the taxpayer, without the making of claim therefor, or, if collection has not been made, shall be abated.

We have previously explained that section 7486 "simply acts as a procedural device ensuring that the Commissioner follows a decision of the court of review in situations where it can be ascertained that all or a part of the amount of the deficiency determined by this Court was disallowed." *Estate of Smith*, 115 T.C. at 345. Thus, where the court of review remands a case to the Tax Court without "indicat[ing] that any ascertainable 'amount' of the previously determined deficiency has been precluded," no abatement is required unless and until the Tax Court enters a revised decision finding a decreased deficiency. *See id.* at 345–49; *see also United States v. Bolt*, 375 F.2d 725, 726 (6th Cir. 1967) (per curiam) (explaining that reversal and remand of a Tax Court decision "did not vitiate the assessment" made pursuant to that decision in the absence of an appeal bond, and that section 7486 entitled the taxpayer "only to an abatement on the assessment for the amount overassessed" in view of the subsequent decision of the Tax Court). And even where an assessment is ripe for abatement under section 7486, a representation by the Commissioner that he will make the necessary abatement is generally sufficient to avoid any need for a court to mandate that he do so. *See Tyne v. Commissioner*, No. 16945, 1969 U.S. App. LEXIS 13495 (7th Cir. May 26, 1969) (denying taxpayer's request for mandatory relief under section 7486 in a twice-remanded case, explaining that the Commissioner had represented that he would abate assessments and issue a refund pursuant to the Tax Court's decision entered after the first remand, and that "[f]urther abatement and refund w[ould] depend upon further decision by the [T]ax [C]ourt" after the second remand).

Respondent has satisfactorily represented in these cases that he will abate any overassessments that exist after we enter our revised decisions. As a result, even if we were to assume (without deciding) that in *Larkin II* the court of appeals disallowed ascertainable amounts of

**[\*14]** the deficiencies we had previously determined,[12] we would not conclude that an order mandating abatement is necessary or appropriate at this juncture. *See Tyne v. Commissioner*, 1969 U.S. App. LEXIS 13495, at \*2–3.

IV.    *Alleged Prior Abatement of 2005 and 2006 Liabilities*

Petitioners' final abatement claim is that respondent issued Notices CP21C to them in May 2017 indicating that he had fully abated their federal income tax liabilities for 2005 and 2006. Petitioners previously raised exactly this argument in connection with the original Rule 155 proceeding following the issuance of our opinion in *Larkin I*, and we rejected it in our prior Order and Decision in the case at Docket No. 19940-09. The court of appeals did not direct us to reconsider this issue. It is accordingly outside the scope of the mandate, and we may not reconsider it in this Rule 155 proceeding.

V.    *FTC Carryovers*

Aside from the issues relating to abatements, petitioners now contend that their deficiencies should be reduced or eliminated by the application of unspecified FTC carryovers from other taxable years. It is too late, however, for petitioners to revive any claim that they are entitled to a carryforward of such credits, because we held in *Larkin I*, T.C. Memo. 2017-54, at \*70–73, that they had failed to prove the amount of any FTC that could be carried forward to any of the years at issue. The court of appeals affirmed that holding, and we may not revisit it. We also decline to consider whether petitioners are entitled to a carryback from some other unspecified year. Not only is any such claim outside the scope of the mandate, but we also generally will not consider claims for carryback deductions or credits that are raised for the first time during Rule 155 proceedings. *See, e.g.*, *Price v. Commissioner*, T.C.

---

[12] Although we need not decide the question, we note that our holding in *Estate of Smith* would likely foreclose such a conclusion. There, we explained that the court of appeals' reversal of the Tax Court's decision finding a deficiency did not amount to disallowance of an ascertainable "amount" of the deficiency. *Estate of Smith*, 115 T.C. at 343–45. Here, although the court of appeals directed in *Larkin II* that we correct certain specified errors affecting the amounts set forth in our previous decisions, the total amounts of the previously determined deficiencies that were disallowed by the court of appeals depend on the effects of the computational adjustments necessary to correct those errors. The exact amounts disallowed thus cannot be ascertained directly from the court of appeals' holdings.

**[\*15]** Memo. 1995-290, 69 T.C.M. (CCH) 3041, 3042, *supplementing* T.C. Memo. 1995-187.

Furthermore, in the unusual circumstances where we will entertain a new claim for a deduction or credit during a Rule 155 proceeding, amendment of the pleadings to reflect the claim must be appropriate. *See Harris v. Commissioner*, 99 T.C. 121, 123–24 (1992), *supplementing* T.C. Memo. 1990-80. Under Rule 41(a), a party may amend a pleading after a responsive pleading has been served only by written consent of the adverse party or by leave of the Court. In determining whether to exercise our discretion to grant leave to amend a pleading, we "examine the particular circumstances in the case before us" and "consider, among other factors, whether an excuse for the delay exists and whether the opposing party would suffer unfair surprise, disadvantage, or prejudice" if we were to grant leave to amend. *Estate of Quick v. Commissioner*, 110 T.C. 172, 178 (1998), *supplemented by* 110 T.C. 440 (1998). In addition, we may refuse to grant leave to amend a pleading if the amendment would be futile, *see Block v. Commissioner*, 120 T.C. 62, 64 (2003), or if it would require further trial, *see Markwardt v. Commissioner*, 64 T.C. 989, 998 (1975). Because petitioners have not even specified the year or years in which they claim any carryback arose, we have no basis by which to evaluate the extent to which amendment of the pleadings would prejudice respondent, whether such amendment would be futile, [13] or whether further trial might be required to dispose of their carryback claims. We consequently will not permit petitioners to amend their pleadings to raise any FTC carryback issues, and we will not consider any such issues in this Rule 155 proceeding.

VI.    *Penalties*

We also reject petitioners' contention that our revised decisions should not sustain the penalties and additions to tax at issue in these cases. Petitioners' position rests on their claims that (1) they were entitled to FTC carryovers that should have eliminated any underpayment or late payment that could have provided the basis for a penalty or addition to tax, and (2) respondent failed to produce evidence

---

[13] We nevertheless note that *Larkin III* suggests the futility of such an amendment, insofar as an FTC may be carried back only to the immediately preceding taxable year, *see* § 904(c), and we found in that case that petitioners had not substantiated a claim that they could carry forward an FTC from 2007 or 2008, *see Larkin III*, T.C. Memo. 2020-70, at \*58–62. Petitioners would have to establish the existence and amount of an unused FTC for 2007 in order to have a credit to carry back to 2006, which is the most recent year at issue in these cases.

**[\*16]** that the penalties were timely approved by a supervisor pursuant to section 6751(b).

To the extent that petitioners' arguments concerning the impact of FTC carryovers on the underpayments and late payments at issue in these cases are distinct from their more general position that they are entitled to FTC carryovers (which we have rejected, *see supra* Part V), their position is foreclosed by the mandate rule and Rule 155. We sustained the penalties and additions to tax in our prior opinion. *Larkin I*, T.C. Memo. 2017-54, at \*73–83. As we have already described, the court of appeals affirmed our determinations of those issues except to the extent that respondent conceded that $10,792 of the section 6662(a) penalty for 2004 had been double-counted. We thus may not revisit those determinations beyond the scope of that concession. And even if we could do so, reconsideration of the penalties and additions to tax would not be proper under Rule 155.

We likewise decline to consider petitioners' section 6751(b) supervisory approval argument. Following the issuance of our opinion in *Larkin I*, we held in *Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016), that section 7491(c) generally imposes a burden on the Commissioner to produce evidence that any penalty determinations made in a notice of deficiency were approved by a supervisor in accordance with section 6751(b). Relying on *Graev*, petitioners contend that respondent has introduced no such evidence in these cases and that our revised decisions therefore may not sustain respondent's penalty determinations.

Although an intervening change in the law is one of the few occurrences that might justify a departure from the mandate rule and the prohibition against raising new issues during a Rule 155 proceeding, *see, e.g.*, *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (noting three circumstances justifying departure from the mandate rule, including where "controlling authority has since made a contrary and applicable decision of the law"); *DeMartino v. Commissioner*, 88 T.C. 583, 584–87 & nn.2 & 9 (1987) (where decision had not yet been entered under Rule 155 pursuant to the Court's prior opinion, granting motion for reconsideration in order to apply subsequently amended version of statute), *supplementing* T.C. Memo. 1986-263, *aff'd*, 862 F.2d 400 (2d Cir. 1988), no such departure is warranted here.

**[\*17]** Petitioners first raised this issue in their briefs before the court of appeals. *See* Final Appellant Opening Brief 23, *Larkin v. Commissioner*, No. 17-1252 (D.C. Cir. Oct. 30, 2019); Final Appellant Reply Brief 26, *Larkin v. Commissioner*, No. 17-1252 (D.C. Cir. Oct. 30, 2019); *see also, e.g.*, *City of N.Y. v. Nat'l R.R. Passenger Corp.*, 776 F.3d 11, 16 (D.C. Cir. 2015) (noting that arguments presented for the first time on appeal may be considered in exceptional circumstances, including where there has been an intervening change in the law). The court of appeals did not directly discuss petitioners' supervisory approval argument, but it did conclude that "the Larkins forfeit many of their arguments by wholly failing to develop their claims or anchor them to the record" and that "[t]he few arguments the Larkins have not forfeited are meritless." *Larkin II*, 2020 WL 2301462, at \*1–2. Supervisory approval is not among the issues the court of appeals directed us to reconsider on remand. The court of appeals accordingly rejected petitioners' argument on that issue, and under the mandate rule we may not consider it.

VII.   *Entry of Revised Decisions*

Consequently, to comply with the mandate, our only remaining task is to enter revised decisions setting forth the correct amounts of the deficiencies, additions to tax, and penalties due from petitioners. As we have noted, the amounts of those items as determined in the notices of deficiency must serve as the starting point for the Rule 155 computations, *see Home Grp., Inc.*, 91 T.C. at 269, and those amounts must then be adjusted to reflect the resolution of the disputed issues that we and the court of appeals have reached. For the reasons we have discussed, we need not take into account any assessments made in accordance with our previous decisions. *See Estate of Smith*, 115 T.C. at 345–48. And because our decisions need only redetermine the amounts set forth in the notices of deficiency, they do not need to reflect petitioners' total tax liabilities for the years at issue if the total liabilities exceed the redetermined deficiencies, additions to tax, and penalties.[14]

---

[14] We note in this regard that whether a taxpayer's total tax liability for a given taxable year is equal to the deficiency for that year depends on the amounts of the variables identified in section 6211(a) at the time the deficiency is calculated. *See Heasley*, 45 T.C. at 458. As discussed herein, respondent represents that the total assessed liabilities for 2003, 2005, and 2006 are equal to the amounts determined in our previous decisions (i.e., that for each of those years the deficiency we previously determined is equal to the total tax liability). Respondent's proposed adjustments to

**[\*18]** We therefore reject respondent's current view that our decisions must determine deficiencies, additions to tax, and penalties of zero. [15] We also reject the figures that petitioners propose as their "appropriate base liabilit[ies]." Although we cannot determine with any certainty from petitioners' submissions how their proposals relate to the amounts determined in our previous decisions or the mandate issued by the court of appeals, we can safely assume that they incorporate petitioners' positions that we have rejected herein. We consequently cannot accept either party's current bottom-line position, and we must scrutinize the account statements that respondent has submitted in order to determine the corrected amounts to be included in our revised decisions.

For 2003 and 2004, respondent's Supplement sets forth the amounts that respondent represents he has assessed for each of those years, along with proposed downward adjustments to those assessments that respondent contends (and petitioners previously conceded) [16] will correct the errors respondent acknowledged on appeal. As we have discussed, the Supplement includes a Form 3623 for 2003 showing that the total assessments respondent has made for that year are equal to the deficiency, addition to tax, and penalty that we previously determined. We thus may calculate the corrected amounts to be set forth in our revised decision for 2003 by applying the downward adjustments to petitioners' assessed liability, as proposed in respondent's Form 3623, to the amounts we previously determined for that year, as follows:

_____

the assessed liabilities for those years are thus equivalent to adjustments to the amounts of the deficiencies, additions to tax, and penalties set forth in our previous decisions. For 2004, however, because we did not treat the assessment made in 2007 as part of the deficiency when we entered our prior Order and Decision in the case at Docket No. 14886-08, *see supra* note 6, the deficiency we previously determined for 2004 did not constitute petitioners' total tax liability at that time.

[15] Respondent's request that we enter decisions determining zero deficiencies because he has already assessed amounts in excess of petitioners' correct liabilities for the years at issue is akin to a request that we enter decisions determining overassessments. We have no jurisdiction to do so. *See Gisholt Mach. Co. v. Commissioner*, 4 T.C. 699, 707–08 (1945); *Farner v. Commissioner*, T.C. Memo. 2012-111, 103 T.C.M. (CCH) 1616, 1617.

[16] Petitioners conceded as much in the Response that they filed, through counsel, to respondent's Supplement and Revised Computation. They have not disavowed that concession except to the extent that their subsequent positions, which we reject herein, are inconsistent therewith.

| [*19] | Sept. 14, 2017 Order and Decision | Adjustment | Corrected Amount |
|---|---|---|---|
| Deficiency | $81,698.00 | ($16,308.00) | $65,390.00 |
| Addition to Tax, § 6651(a)(1) | 20,424.50 | (4,077.00) | 16,347.50 |
| Penalty, § 6662(a) | 16,339.60 | (3,261.60) | 13,078.00 |

Respondent's computation of petitioners' total tax liability for 2004 is more complex, since it includes assessments of tax and a section 6662(a) penalty that were made before respondent issued the notice of deficiency underlying the case at Docket No. 14886-08. However, as described *supra* notes 4, 6, and 7, those prior assessments affected the amounts of the deficiency and penalty we previously determined for 2004 only to the extent that, as respondent acknowledged on appeal, the amount of the section 6662(a) penalty we determined for that year included an excess $10,792. Petitioners previously conceded[17] that respondent's Supplement now correctly adjusts for all of the errors that respondent has acknowledged with respect to 2004.

As we have also discussed, respondent represents that the total assessments he has made for 2004 include the full amounts of the deficiency and the section 6662(a) penalty that we previously determined. To correct the errors he acknowledged on appeal with respect to 2004, respondent proposes downward adjustments to the assessed amounts. The proposed adjustments represent less than the full amounts of the deficiency and the section 6662(a) penalty we previously determined. We thus may calculate the corrected amounts to be set forth in our revised decision for 2004 by applying the downward adjustments to petitioners' assessed liability, as proposed in respondent's Supplement, to the amounts we previously determined for that year, as follows:

| | Sept. 14, 2017 Order and Decision | Adjustment | Corrected Amount |
|---|---|---|---|
| Deficiency | $63,619.00 | ($18,181.00) | $45,438.00 |
| Penalty, § 6662(a) | 23,515.80 | (14,428.20) | 9,087.60 |

For 2005 and 2006, respondent represents in the Forms 3623 attached to his Revised Computation that he has made total assessments for 2005 equal to the deficiency, addition to tax, and

---

[17] *See supra* note 16.

[*20] penalty that we previously determined, and that he has likewise made total assessments for 2006 equal to the deficiency and penalty that we previously determined. To correct the errors he acknowledged on appeal with respect to those years, respondent's Revised Computation proposes downward adjustments, the accuracy of which petitioners previously conceded,[18] to the assessed liabilities. We thus may calculate the corrected amounts to be set forth in our revised decision for 2005 by applying respondent's proposed adjustments to petitioners' assessed liability for that year to the amounts we previously determined for that year, as follows:

| | Sept. 14, 2017 Order and Decision | Adjustment | Corrected Amount |
|---|---|---|---|
| Deficiency | $114,870 | ($18,875.00) | $95,995.00 |
| Addition to Tax, § 6651(a)(1) | 11,487 | (1,887.50) | 9,599.50 |
| Penalty, § 6662(a) | 22,974 | (3,775.00) | 19,199.00 |

We may similarly calculate the corrected amounts to be set forth in our revised decision for 2006, as follows:

| | Sept. 14, 2017 Order and Decision | Adjustment | Corrected Amount |
|---|---|---|---|
| Deficiency | $118,259.00 | ($18,725) | $99,534.00 |
| Penalty, § 6662(a) | 23,651.80 | (3,745) | 19,906.80 |

VIII. *Conclusion*

Because petitioners' objections to respondent's revised computations are without merit, and because we are satisfied that respondent has adequately represented that he will properly abate any existing overassessments for the years at issue, we will enter a revised decision in each of these cases in accordance with the adjustments proposed in respondent's revised computations.

To reflect the foregoing,

*Decisions will be entered in accordance with respondent's revised computations.*

---

[18] *See supra* note 16.